1
2
3
4
5
6
7
8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEVEN FRYMAN,

11            Plaintiff,                    No. CIV S-07-2636 JAM DAD P

12        vs.

13   A. TRAQUINA, et al.,

14            Defendants.         FINDINGS AND RECOMMENDATIONS

15   _____/

16            Plaintiff is a state prisoner confined at the California State Prison (CSP) - Solano

17   proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983.  Pending

18   before the court are the parties' cross-motions for summary judgment brought pursuant to Rule

19   56 of the Federal Rules of Civil Procedure.

20                            **BACKGROUND**

21            On December 7, 2007, plaintiff commenced this action by filing a complaint

22   alleging that defendants Traquina and Noriega have been deliberately indifferent to his serious

23   medical needs.  Specifically, plaintiff alleges that he suffers from a growth on the inner part of

24   the left side of his chest.  He further alleges that, at the time he informed defendants of the

25   growth, it was enlarging in size each day and was causing him increasing discomfort.  Plaintiff

26   alleges that, on October 11, 2006, he saw a specialist, Dr. Eisenberg, who told him that he had a

                                    1

1   gynecomastic cyst and that surgery was an acceptable treatment for the condition.  Plaintiff also

2   alleges that, on April 16, 2007, he saw another specialist, Dr. Young, and he too recommended

3   surgery to treat the condition.

4           Plaintiff alleges that defendant Traquina, Chief Medical Officer at CSP-Solano,

5   determined that surgery would be simply cosmetic and was therefore unnecessary.  Plaintiff also

6   alleges that defendant Noriega, the Acting Chief Physician and Surgeon at CSP-Solano, agreed

7   with defendant Traquina.  Plaintiff maintains that the defendants failed to address or consider his

8   concerns about the pain he experienced when he touched the affected area, laid on it, brushed

9   against it, or wore a t-shirt over it.  Plaintiff also alleges that he received nothing from defendants

10  by way of pain management medication.  Plaintiff concludes that defendants Traquina and

11  Noriega have violated his rights under the Eighth Amendment by failing to treat his serious

12  medical condition and the pain he suffers as a result thereof.

13          At screening the court determined that plaintiff's complaint appeared to state

14  cognizable claims for relief against defendants Traquina and Noriega, and in due course, the

15  United States Marshal served plaintiff's complaint on them.  On March 13, 2008, defendants

16  filed an answer.  On March 24, 2008, this court issued a discovery order.  On April 16, 2008,

17  plaintiff filed a motion for summary judgment, arguing that the evidence he has submitted

18  establishes that the medical care he received from defendants fell below constitutional standards.

19  On June 3, 2008, defendants filed a combined opposition to plaintiff's motion and cross-motion

20  for summary judgment, arguing that the evidence presented in support of their motion establishes

21  that they were not deliberately indifferent to plaintiff's medical needs.  On June 12, 2008,

22  plaintiff filed a timely opposition to defendants' cross-motion for summary judgment.

23                  **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

24          Summary judgment is appropriate when it is demonstrated that there exists "no

25  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

26  matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

whatever is before the district court demonstrates that the standard for entry of summary

judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.  See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

1  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

2  1436 (9th Cir. 1987).

3           In the endeavor to establish the existence of a factual dispute, the opposing party

4  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

5  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

6  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

7  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

8  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

9  committee's note on 1963 amendments).

10          In resolving the summary judgment motion, the court examines the pleadings,

11  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

12  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

13  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

14  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

15  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

16  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

17  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

18  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

19  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

20  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

21  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

22          On January 10, 2008, the court advised plaintiff of the requirements for opposing

23  a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

24  F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

25  /////

26  /////

**OTHER APPLICABLE LEGAL STANDARDS**

I. <u>Civil Rights Act Pursuant to 28 U.S.C. § 1983</u>

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  <u>See</u> <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of <u>respondeat</u> <u>superior</u> and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  <u>See</u> <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  <u>See</u> <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

II. <u>Eighth Amendment and Adequate Medical Care</u>

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986); <u>Ingraham v. Wright</u>, 430 U.S. 651, 670 (1977); <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06 (1976). In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials

1  acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.

2  Seiter, 501 U.S. 294, 298-99 (1991).

3  Where a prisoner's Eighth Amendment claims arise in the context of medical

4  care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

5  deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth

6  Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need

7  and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050,

8  1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133

9  (9th Cir. 1997) (en banc).

10  A medical need is serious "if the failure to treat the prisoner's condition could

11  result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

12  McGuckin, 974 F.2d at 1059 (quoting Estelle v. Gamble, 429 U.S. at 104).  Indications of a

13  serious medical need include "the presence of a medical condition that significantly affects an

14  individual's daily activities."  Id. at 1059-60.  By establishing the existence of a serious medical

15  need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation.

16  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

17  If a prisoner establishes the existence of a serious medical need, he must then

18  show that prison officials responded to the serious medical need with deliberate indifference.

19  Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials

20  deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in

21  which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94

22  (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard

23  to medical care, however, "the indifference to his medical needs must be substantial.  Mere

24  'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

25  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

26  105-06).  See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere

6

1    negligence in diagnosing or treating a medical condition, without more, does not violate a

2    prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate

3    indifference is "a state of mind more blameworthy than negligence" and "requires 'more than

4    ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835

5    (quoting Whitley, 475 U.S. at 319).

6           Delays in providing medical care may manifest deliberate indifference.  Estelle,

7    429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in

8    providing care, a plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d

9    1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332,

10   1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v.

11   Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a]

12   prisoner need not show his harm was substantial; however, such would provide additional

13   support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett

14   v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d at 1060.

15          Finally, mere differences of opinion between a prisoner and prison medical staff

16   as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim.

17   Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v.

18   Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.

19   1981).

20          **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ARGUMENTS**

21   I.  Plaintiff's Statement of Undisputed Facts and Evidence

22          Plaintiff's statement of undisputed facts is supported by citations to his medical

23   records as well as to copies of his administrative grievances and prison officials' responses

24   thereto.  Plaintiff's evidence establishes the following:

25          At all relevant times, plaintiff was incarcerated at CSP-Solano.  On or about

26   August 25, 2005, plaintiff saw prison medical personnel for a lump on the left side of his chest.

1   (Plaintiff's Statement of Undisputed Facts (PSUF) at p. 2, ¶ 3.)  Dissatisfied with the medical

2   treatment he was receiving, on or around October 13, 2005, plaintiff saw prison medical

3   personnel again and requested treatment for the same lump.  (PSUF at p. 2, ¶ 4.)  During that

4   visit, plaintiff received an order to see an outside medical provider for a mammogram, which he

5   underwent on November 7, 2005.  (Id. at p. 3, ¶ 5.)  However, when plaintiff next saw prison

6   medical personnel on December 21, 2005, they were unable to find the results of the

7   mammogram in his medical records.  (Id.)

8         On March 6, 2006, plaintiff submitted a health care services request form,

9   explaining that he was very concerned about the growth and that had not heard any additional

10  information about the results of his previously administered blood test and mammogram.  (Id. at

11  ¶ 6.)  Plaintiff submitted subsequent health care services request forms in May and July 2006,

12  expressing the same concerns regarding his medical condition and treatment.  (Id.)

13        On August 2, 2006, plaintiff underwent a second mammogram, which revealed

14  that the growth had become more prominent.  (Id. at ¶ 7.)  Plaintiff also saw Dr. Eisenberg with

15  Queen of the Valley Hospital, who observed that plaintiff had "left-sided gynecomastia with

16  some lymphadenopathy."  (Id.)  Dr. Eisenberg ordered additional follow-up tests but did not

17  prescribe plaintiff any medication.  (Id.)

18        On October 5, 2006, plaintiff submitted a health care services request form,

19  asking to see a specialist for the growth on his chest.  (Id. at ¶ 8.)  On October 11, 2006, he saw

20  Dr. Eisenberg again, who observed that plaintiff's left gynecomastia was considerable in degree

21  and quite tender.  (Id. at ¶ 9.)  He noted that if final tests ruled out an underlying endocrine

22  disease, plaintiff "should have a plastic breast reduction, as this is likely to be progressive and

23  cause of considerable distress."  (Id.)  In an addendum dated October 16, 2006, Dr. Eisenberg

24  recommended that a plastic surgeon excise the growth because general surgeons tend to produce

25  a considerable deformity.  (Id.)  He also noted that he had ruled out other causes of the growth,

26  /////

such as testicular tumor, deficiency or excessive testosterone, chronic renal disease, chronic liver disease, and drug therapy.

On November 21, 2006, and January 12, 2007, plaintiff submitted health care services request forms, inquiring when his surgery would be scheduled because his chest was causing him constant pain.  (PSUF at p. 3, ¶ 10.)  On April 16, 2007, plaintiff saw Dr. Young with U.C. San Francisco Medical Center, Division of Plastic and Reconstructive Surgery who noted that plaintiff was experiencing pain and tenderness upon moving his arms and recommended that plaintiff "undergo excision of the excess breast tissue."  (Id. at ¶ 11.)

On November 26, 2006, plaintiff submitted an administrative grievance regarding his medical care.  (Id. at Attach. p. 13 of 129.)[1]  On February 9, 2007, in a first formal level response to plaintiff's administrative grievance, defendant Traquina, on behalf of defendant Noriega, informed plaintiff that a review of his unit health record had revealed that he had gynecomastia (swelling of the breast tissue), which was benign.  (Id. at Attach. p. 17 of 129.)  He further informed plaintiff that his "case was reviewed by the Utilization Management Committee and a decision was rendered to not perform surgery, as this type of procedure is considered cosmetic."  (Id.)  On April 16, 2007, in a second formal level response to the same administrative grievance, defendant Traquina denied plaintiff's request for surgery, similarly noting that "[t]here is no medical need to excise the excessive breast tissue, hence, such procedure is considered cosmetic in nature."  (Id. at Attach. p. 21 of 129.)

II.  Plaintiff's Arguments

Plaintiff argues that defendants have been deliberately indifferent to his serious medical needs.  (Pl.'s Mot. for Summ. J. at 6-8.)  Specifically, plaintiff argues that defendants have denied him surgery for the growth on his chest, erroneously labeling the necessary treatment

---

[1]  Although plaintiff refers to the documents attached to his submission as exhibits, they are not clearly marked as such.  Accordingly, the court will refer to the attached documents by the page numbers assigned to them by the court's CM/ECF system.

for his condition as merely cosmetic and ignoring the fact that the growth was enlarging in size, causing him increased pain, and could become malignant. (Id. at 7.)  Plaintiff contends that defendants are liable for both failing to respond to his requests for treatment and for causing him pain and suffering. (Id. at 8.)  Accordingly, plaintiff concludes that defendants have violated his Eighth Amendment rights, and the court should grant his motion for summary judgment.

In opposing defendants' cross motion for summary judgment plaintiff reiterates these arguments.  In addition, he contends that the surgery he needs is not cosmetic and that Dr. Eisenberg who recommended that the surgery by performed suggested that it be performed by a plastic surgeon only to avoid leaving plaintiff with a deformity.  (Pl.'s Traverse and Opp'n. at 3.) Plaintiff notes that Dr. Eisenberg did not indicate the recommended surgery was merely cosmetic.  (Id.)   In any event, plaintiff contends that the evidence is undisputed that, however it is characterized, this medical condition is causing him pain and suffering and requires medical treatment which doctors Traquina and Noriega are refusing to provide.  (Id.)  Plaintiff argues that both doctors, by their own admission, participate in the Medical Authorization Review Committee decisions at CSP-Solano and that it was this committee who denied him the surgery that had been recommended by two outside physicians.  (Id. at 4.)  In addition, the names of both doctors appear on the decisions denying plaintiff's inmate appeals from that decision denying him the needed surgery.  (Id.)  Plaintiff argues that this evidence establishes that both the defendants personally participated in the decision to characterizing the surgery that had been recommended by doctors Eisenberg and Young as cosmetic and therefore unnecessary elective surgery.  (Id.)  He contends that both defendants affirmatively acted to deny him the necessary medical treatment without even considering the pain and suffering he is experiencing as a result of the condition.  (Id.)

/////

/////

/////

**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND ARGUMENTS**

I. Defendants' Statement of Undisputed Facts and Evidence

Defendants' statement of undisputed facts is supported by citations to declarations by defendants Traquina and Noriega as well as to plaintiff's complaint.  The evidence submitted by defendants establishes the following.  At all relevant times, defendant Traquina was the Chief Medical Officer at CSP-Solano.  (Defendants' Statement of Undisputed Facts (DSUF) at p. 2, ¶ 1.)  Defendant Traquina's duties included overseeing the care and treatment of inmates/patients, supervising the prison medical staff and investigating, responding to inmate appeals at the second level of review and participating in and approving Medical Authorization Review Committee decisions.  (Traquina Decl. at 2.)

At all relevant times, defendant Noriega was Acting Chief Physician and Surgeon at CSP-Solano.  (DSUF at p. 2, ¶ 2.)  Defendant Noriega's duties included overseeing the care and treatment of inmates/patients, supervising the prison medical staff, investigating and responding to inmate appeals at the first level of review and participating in Medical Authorization Review Committee decisions.  (Noriega Decl. at 2.)  At the time plaintiff filed his administrative grievance regarding the growth on his chest, defendant Noriega was unavailable to respond to plaintiff's first level appeal because he was on vacation.  (Id. at 3.)  To avoid delay in responding to plaintiff, defendant Traquina reviewed and signed the response on behalf of defendant Noriega, explaining that the appeal was being denied because the Medical Authorization Review Committee had decided that the surgery plaintiff was requesting was cosmetic and therefore "excluded" pursuant to California Code of Regulation, Title 15, section 3321.  (Traquina Decl. at 2; Noriega Decl. at 2-3.)

Plaintiff appealed that decision to the second formal level of review.  (Traquina Decl. 3.)  Defendant Traquina prepared a second level response, again denying plaintiff the requested surgical procedure and explaining that CSP-Solano was bound by the California Code of Regulations which exclude cosmetic procedures from those that may be provided to inmates.

1    (Id.)  Dr. Traquina also explained that laboratory tests had revealed that there was no medical

2    need to excise the excessive breast tissue, thus making the requested procedure cosmetic.  (Id.)

3    Dr. Traquina declares that he did not intend to deny plaintiff any necessary medical care or to

4    cause plaintiff to suffer any harm or injury.  (Id.)  Rather, in Dr. Traquina's professional opinion

5    plaintiff received all necessary and appropriate medical care.  (Id.)

6           Likewise, Dr. Noriega declares that he did not intentionally deny plaintiff

7    necessary or appropriate medical care or cause him to suffer any harm or injury.  (Noriega Decl.

8    at 3.)  It is Dr. Noriega's professional opinion that plaintiff received all necessary and appropriate

9    medical care.  (Id.)  Indeed, because he was on vacation at the time plaintiff filed his

10   administrative grievance Dr. Noriega was not even involved in denying plaintiff's grievances.

11   (Id.)

12   II.  Defendants' Arguments

13          Defense counsel argues that under the undisputed facts of this case neither

14   defendant Traquina nor defendant Noriega was deliberately indifferent to plaintiff's medical

15   needs.  (Defs.' Mot. for Summ. J. at 5-9.)  Counsel contends that plaintiff has not, and cannot,

16   establish that the defendants had actual knowledge of any substantial risk of serious harm to him.

17   (Id. at 8.)  Counsel reiterates that mere differences in opinion concerning the proper course of

18   medical treatment, as is the situation here, is insufficient to support a constitutional claim of

19   deliberate indifference.  (Id. at 7-8.)

20          Defendants' counsel argues that Dr. Traquina had no role in plaintiff's medical

21   care aside from responding to his administrative grievance.  Counsel notes that Dr. Traquina

22   understood that the Medical Authorization Review Committee had determined that the requested

23   procedure was not medically necessary but rather was a cosmetic procedure, unavailable to

24   inmates under the California Code of Regulations.  According to counsel, the evidence before the

25   court establishes that Dr. Traquina understood that plaintiff's laboratory tests showed normal

26   results and ruled out other causes of the growth such as testicular tumor, deficiency or excessive

1   testosterone, chronic renal disease, chronic liver disease, and drug therapy thus supporting his

2   belief that plaintiff was receiving all necessary medical care.  (Defs.' Mot. for Summ. J. at 6 &

3   8.)

4          Defense counsel also argues that Dr. Noriega had no involvement whatsoever

5   with the medical claim plaintiff raises in this case.  Although one of his duties is to respond to

6   inmate appeals at the first formal level of review, in this instance, defendant Noriega was on

7   vacation and thus unavailable to respond to plaintiff's grievance.  (Defs.' Mot. for Summ. J. at 5

8   & 8-9.)

9          Defense counsel emphasizes that neither Dr. Traquina nor Dr. Noriega themselves

10  were ever asked to provide treatment to plaintiff.  Rather, Dr. Traquina simply reviewed

11  plaintiff's administrative grievance and Dr. Noriega had no involvement in plaintiff's case at all.

12  (Defs.' Mot. for Summ. J. at 5.)  Accordingly, defense counsel concludes that doctors Traquina

13  and Noriega are entitled to judgment as a matter of law.  (Id. at 9.)

## ANALYSIS

15         As an initial matter, the court finds that plaintiff's gynecomastic cyst constitutes a

16  serious medical condition.  The record in this case demonstrates that plaintiff repeatedly sought

17  and received medical care for his condition from medical personnel at CSP-Solano as well as

18  from outside specialists, including Dr. Eisenberg and Dr. Young.  It is well established that "[t]he

19  existence of an injury that a reasonable doctor or patient would find important and worthy of

20  comment or treatment; the presence of a medical condition that significantly affects an

21  individual's daily activities; or the existence of chronic and substantial pain are examples of

22  indications that a prisoner has a 'serious' need for medical treatment."  McGuckin, 974 F.2d at

23  1059-60.  See also Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the Eighth

24  Amendment duty to provide medical care applies "to medical conditions that may result in pain

25  and suffering which serve no legitimate penological purpose.") aff'd, 97 F.3d 1458 (9th Cir.

26  1996).  Here, plaintiff's medical records as well as the observations and treatment

13

1  recommendations by several doctors, compel the conclusion that plaintiff's gynecomastic cyst

2  presented a serious medical condition.  Accordingly, resolution of the cross-motions for summary

3  judgment pending before the court hinges on whether defendants responded to plaintiff's serious

4  medical need with deliberate indifference.  Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106.

5        As noted above, § 1983 requires that there be an actual connection or link

6  between the actions of the defendants and the deprivation alleged to have been suffered by

7  plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423

8  U.S. 362 (1976).  Here, defense counsel essentially argues that doctors Traquina and Noriega

9  were not involved in plaintiff's treatment and therefore could not have subjected him to a

10  deprivation of his constitutional right to adequate medical care within the meaning of § 1983.

11  See Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (§ 1983 requires an affirmative act,

12  participation in another's affirmative act or omission of an act legally required).   Defendants

13  have not met their burden of establishing they are entitled to judgment in their favor on this basis.

14  First, plaintiff has alleged that in August of 2005, he went to the two defendants seeking

15  treatment for his condition.  (Compl. at 4.)  Second, plaintiff's medical records reflect that he was

16  in fact seen by both Dr. Noriega and Dr. Traquina during the relevant time period.  (PSUF,

17  Attach. pp. 28, 55-56, 58, 66.)  Finally, although the defendants appear to intentionally avoid the

18  subject, the evidence before the court appears to establish that Dr. Traquina personally

19  participated in the Medical Authorization Review Committee decision to deny plaintiff the

20  surgery on the grounds that the procedure recommended by doctors Eisenberg and Young was

21  cosmetic and therefore not authorized by the governing regulations.  (Id. at 126.)  While the

22  evidence before the court fails to address whether Dr. Noriega personally participated in that

23  decision, it does not eliminate that possibility.  Thus, defendants have failed to establish their

24  entitlement to a judgment in their favor on this basis.

25        Next, defendants contend that it is well established that a mere difference of

26  opinion between a prisoner and prison medical staff does not give rise to a § 1983 claim.

1    Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332; Franklin, 662 F.2d at 1344; see also Fleming

2    v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the

3    appropriate course of care does not create a triable issue of fact because he has not shown that he

4    has any medical training or expertise upon which to base such an opinion.").  Similarly, a

5    difference of medical opinion between doctors does not give rise to a constitutional violation.

6    See, e.g., Toguchi, 391 F.3d at 1059-60 ("Dr. Tackett's contrary view was a difference of

7    medical opinion, which cannot support a claim of deliberate indifference."); Sanchez, 891 F.2d at

8    242 (difference of opinion between medical personnel regarding the need for surgery does not

9    amount to deliberate indifference to a prisoner's serious medical needs); Samonte v. Bauman,

10   No. 06-16607, 2008 WL 176462 (9th Cir. Jan. 18, 2008) ("Dr. Bauman's refusal to authorize

11   cataract surgery after another doctor determined that such surgery was an option was a

12   'difference of medical opinion,' insufficient by itself to raise a triable issue of deliberate

13   indifference.")[2]  These are correct statements of the law.

14           To establish that a difference of medical opinion as to the appropriate course of

15   treatment amounted to deliberate indifference, plaintiff must "show that the course of treatment

16   the doctors chose was medically unacceptable under the circumstances" and that "they chose this

17   course in conscious disregard of an excessive risk to [the prisoner's] health." Jackson, 90 F.3d at

18   332.  See also Toguchi, 391 F.3d at 1058.  The evidence before the court appears to establish as

19   follows.  In August of 2005, plaintiff sought treatment for a lump on the front of his chest.

20   (PSUF, Attach. at p. 24.)  Over the next twelve months plaintiff complained that the area was

21   becoming more tender and painful and some medical testing was conducted.  (Id. at 25-32.)  In

22   August of 2006, plaintiff was sent to Queen of the Valley Hospital for a mammogram.  (Id. at

23   35.)  As noted above, after additional testing and consultation, Dr. Eisenberg found that plaintiff

24   /////

25   _____

26          [2] Citation to this latter unpublished decision is appropriate pursuant to Ninth Circuit Rule
     36-3(b).

had a gynecomastia[3] of "considerable degree and quite tender" with a "crescent of tissue" that was rapidly growing in size.  (Id.)  Following further testing, on October 16, 2006, Dr. Eisenberg reported that other causes for plaintiff's condition such as a testicular tumor, deficient or excessive testosterone, renal disease, liver disease or drug therapy had been ruled out and he recommended a surgical excision by a plastic surgeon to avoid the production of a considerable deformity.  (Id. at 43.)  At that time, Dr. Eisenberg recommended surgery based on his prior conclusion that plaintiff's gynecomastia was "likely to be progressive and cause considerable distress." (Id. at 41.)  On November 21, 2006 and January 12, 2007, petitioner complained to prison officials that he was in constant pain as a result of his condition and inquired about the status of his surgery that had been recommended by Dr. Eisenberg in October of 2006.  (Id. at 44-45.)  In response, plaintiff was informed by prison officials that the referral for surgery had been made and they were "awaiting scheduling."  (Id.)  On January 30, 2007, the Medical Authorization Review Committee, reflecting Dr. Traquina as the Physician Advisor, denied plaintiff's request for service and listed the reason for the decision merely as "cosmetic."  (Id. at 125-26; Id. at 103.)  Despite that decision, on April 16, 2007, plaintiff was seen by a surgeon, Dr. Young, at U.C. San Francisco Medical Center.  (Id. at 446-47.)  Dr. Young recounted that plaintiff had developed increased swelling of the left chest over the previous two years, experienced some tenderness and pain when moving his arms and had been "referred for surgical excision of the lesion because it is quite large."  (Id. at 46.)  Thereafter, on July 12, 2007, Dr. Traquina wrote in plaintiff's medical records as follows:

/////

/////

/////

---

   [3] Gynecomastia is a benign enlargement of the male breast resulting from a proliferation of the glandular component of the breast.  It is defined clinically by the presence of a rubbery or firm mass extending concentrically from the nipples.

1             Case discussed by MARC [Medical Authorization Review
Committee] this morning.  Case denied for plastic surgery of both
2             breasts as considered cosmetic surgery.  No medical necessity.

3  (Id. at 66.)[4]

4        Here, plaintiff has not submitted evidence to the court demonstrating that the

5  defendants chose a course of treatment that was medically unacceptable or in conscious disregard

6  of an excessive risk to plaintiff's health.  See e.g., Bridges v. Runnels, No. CIV S-04-0274 FCD

7  CMK, 2007 WL 1395095 at **3-5 (E.D. Cal. May 10, 2007) (even if a causal link exists between

8  defendants and the alleged constitutional violation, plaintiff failed to show the course of

9  treatment recommended by the medical committee was medically unacceptable and chosen in

10  conscious disregard to an excessive risk to plaintiff's health).

11        On the other hand, the defendants have not submitted evidence to the court

12  demonstrating that this is a mere difference of medical opinion between doctors over the

13  appropriate course of treatment.  Rather, the evidence before the court reflects that two

14  consulting doctors have recommended surgery for plaintiff's condition which plaintiff alleges,

15  with some support in the record, is growing worse and causes him to suffer pain.  The evidence

16

---

17     [4] With respect to medical and dental treatment and service exclusions in California
prisons, Title 15 California Code of Regulations (CCR) § 3350.1(a)(3) provides:
18

19          (a) Treatment refers to attempted cuative treatment and does not
preclude palliative therapies to alleviate serious debilitating
conditions such as pain  management and nutritional support.
20          Treatment shall not be provided for the following conditions:

21          (3) Conditions that are cosmetic.  Examples include
but are not limited to:
22

23          (A) Removal of tattoos.
             (B) Removal of nontoxic goiter.
             (C) Breast reduction or enlargement.
24          (D) Penile implants.

25  However, treatment for those conditions that are excluded under this regulation may be provided
where the inmate's attending physician prescribes the treatment and the medical authorization
26  review committee approves it.  15 CCR § 3350.1(d).

1   also establishes only that the defendants have rejected treating the condition with surgery as

2   "cosmetic" and not a "medical necessity."  However, defendants have submitted no evidence

3   indicating what course of treatment is medically acceptable for plaintiff's condition, which this

4   court has found to constitute a serious medical condition.[5]  See Brock v. Wright, 315 F. 3d 158,

5   164 n.3 (2d Cir. 2003) (finding evidence of pain caused by a prisoner's keloid condition to bar

6   summary judgment and noting that "[m]erely because a condition might be characterized as

7   'cosmetic' does not mean that its seriousness should not be analyzed[.]"); Martin v. Alameida,

8   No. Civ. S-04-2234 FCD KJM P, 2007 WL 2344889 * 5 (E.D. Cal. Aug. 14, 2007).  Certainly,

9   the defendants' declarations in which they both state that in their professional opinions that

10   plaintiff received all reasonable and necessary care and, parroting the language of the legal claim,

11   that they did not knowingly or intentionally deny him adequate medical care, do not establish that

12   /////

13   /////

14   /////

15   /////

16

---

17       [5] Rather than address plaintiff's prison medical records and identify the course of treatment being pursued by prison medical staff following the rejection of the consulting

18   physicians' recommendations for surgery, defendants have instead filed extensive formal objections to those records.  Defense counsel argues that plaintiff's evidence should be excluded

19   on the grounds that the medical records from plaintiff's CDCR file constitute hearsay, lack foundation and are not properly authenticated.  The objections are overruled.  It cannot

20   reasonably be disputed that the records in question are plaintiff's medical records from his prison file.  Those records are created and maintained by prison officials.  To the extent some of those

21   records are difficult to read, it is in large part because of the handwriting of prison medical personnel.  Moreover, it would be an abuse of discretion to refuse to consider evidence offered

22   by a pro se plaintiff at the summary judgment stage.  See, e.g., Jones v. Blanas, 393 F.3d 918, 935 (9th Cir. 2004) (reversing and remanding with instructions to consider evidence offered by

23   the pro se plaintiff in his objections to the findings and recommendations); Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (holding that the district court properly considered a

24   diary which defendants moved to strike as inadmissible hearsay because "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We focus instead

25   on the admissibility of its contents."); Johnson v. Meltzer, 134 F.3d 1393, 1399-1340 (9th Cir. 1998) (reversing and remanding for consideration of the pro se plaintiff's verified motion as an

26   affidavit in opposition to summary judgment).

1  they are entitled to judgment in their favor.  Defendants have simply failed to establish the course

2  of care they chose to employ in plaintiff's case.[6]

3          Accordingly, based on the evidence submitted by the parties in connection with

4  the pending motions, the court concludes that neither party has established that they are entitled

5  to judgment in their favor as a matter of law and both motions for summary judgment should be

6  denied without prejudice to re-filing with a proper evidentiary showing.[7]

7                                          **CONCLUSION**

8          For the reasons discussed above, IT IS HEREBY RECOMMENDED that:

9          1.  Plaintiff's April 16, 2008 motion for summary judgment (Doc. No. 14) be

10  denied without prejudice; and

11          2.  Defendants' June 3, 2008 cross-motion for summary judgment (Doc. No. 18)

12  be denied without prejudice.

13          These findings and recommendations are submitted to the United States District

14  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

15  days after being served with these findings and recommendations, any party may file written

16  objections with the court and serve a copy on all parties.  Such a document should be captioned

17  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18  /////

19  /////

20  _____

21          [6]  In light of the court's conclusion that plaintiff's medical condition is a serious one and
    the evidence that he experiences some degree of pain associated with that condition, if the

22  evidence were to establish that defendants are providing no treatment whatsoever because the
    condition is deemed by them to be "cosmetic," then plaintiff may very well be entitled to

23  judgment in his favor.  Neither party has established the material facts in this regard to the court's
    satisfaction.

24          [7]  The court would note that to the extent plaintiff may be attempting to proceed against
    Dr. Traquina and Dr. Noriega based upon their involvement in the inmate appeals process, he

25  fails to state a cognizable constitutional claim.  "[I]nmates lack a separate constitutional
    entitlement to a specific grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.

26  2003)) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

shall be served and filed within ten days after service of the objections.  The parties are advised

that failure to file objections within the specified time may waive the right to appeal the District

Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 23, 2008.

_Dale A. Drozd_

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
frym2636.57

20