1

2

3

4

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEVEN FRYMAN,

11              Plaintiff,               No. CIV S-07-2636 JAM DAD P

12        vs.

13   A. TRAQUINA, et al.,                ORDER AND

14              Defendants.              FINDINGS AND RECOMMENDATIONS

15   _____/

16        Plaintiff is a state prisoner proceeding through counsel with a civil rights action

17   seeking relief under 42 U.S.C. § 1983.  The matter is before the court on defendants' amended

18   motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil

19   Procedure.  Plaintiff has filed an opposition to the motion, and defendants have filed a reply.

20                              **BACKGROUND**

21        Plaintiff is proceeding on his original complaint against defendants Traquina and

22   Noriega.  Therein, he alleges that he suffers from a growth on the inner part of the left side of his

23   chest.  At the time he informed defendants of the growth, it was enlarging in size each day and

24   was causing him increasing discomfort.  On October 11, 2006, plaintiff saw a specialist, Dr.

25   Eisenberg, who told him that he had a gynecomastic cyst and that surgery was an acceptable

26   /////

1

treatment for the condition.  On April 16, 2007, plaintiff saw another specialist, Dr. Young, and

he too recommended surgery to treat the condition.  (Compl. Attach. at 1.)

Plaintiff alleges that defendant Traquina, Chief Medical Officer at CSP-Solano,

determined that surgery would be simply cosmetic and was therefore unnecessary.  Plaintiff also

alleges that defendant Noriega, the Acting Chief Physician and Surgeon at CSP-Solano, agreed

with defendant Traquina.  Plaintiff maintains that the defendants failed to address or consider his

concerns about the pain he experienced when he touched the affected area, laid on it, brushed

against it, or wore a t-shirt over it.  Plaintiff also alleges that he received nothing from defendants

by way of pain management medication.  Plaintiff concludes that defendants Traquina and

Noriega have violated his rights under the Eighth Amendment by failing to treat his serious

medical condition and the pain he suffers as a result thereof.  (Compl. Attach. at 1-2.)

**PROCEDURAL HISTORY**

At screening the court determined that plaintiff's complaint appeared to state

cognizable claims for relief against defendants Traquina and Noriega, and in due course, the

United States Marshal served plaintiff's complaint on them.  On March 13, 2008, defendants

filed an answer.  On March 24, 2008, this court issued a discovery order.  The parties

subsequently filed cross-motions for summary judgment.  On October 24, 2008, the undersigned

issued findings and recommendations, recommending that both parties' motions be denied

without prejudice.  On January 15, 2009, the assigned district judge adopted the findings and

recommendations and denied the summary judgment motions without prejudice.

On June 10, 2009, defendants filed the pending amended motion for summary

judgment, arguing that the evidence presented in support of their motion establishes that they

were not deliberately indifferent to plaintiff's serious medical needs.  On August 27, 2009,

plaintiff filed an opposition to the motion, arguing that the medical care he received from the

defendants in connection with the growth in his chest and the increasing pain caused by it fell

below constitutional standards.  On September 4, 2009, defendants filed a reply.

1    **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

2              Summary judgment is appropriate when it is demonstrated that there exists "no

3    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

4    matter of law."  Fed. R. Civ. P. 56(c).

5                        Under summary judgment practice, the moving party
                         always bears the initial responsibility of informing the district court
6                        of the basis for its motion, and identifying those portions of "the
                         pleadings, depositions, answers to interrogatories, and admissions
7                        on file, together with the affidavits, if any," which it believes
                         demonstrate the absence of a genuine issue of material fact.
8

9    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

10   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

11   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

12   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

13   after adequate time for discovery and upon motion, against a party who fails to make a showing

14   sufficient to establish the existence of an element essential to that party's case, and on which that

15   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

16   concerning an essential element of the nonmoving party's case necessarily renders all other facts

17   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

18   whatever is before the district court demonstrates that the standard for entry of summary

19   judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

20             If the moving party meets its initial responsibility, the burden then shifts to the

21   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

22   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

23   establish the existence of this factual dispute, the opposing party may not rely upon the

24   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

25   form of affidavits, and/or admissible discovery material, in support of its contention that the

26   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

1    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2    of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3    (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

4    1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

5    return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

6    1436 (9th Cir. 1987).

7              In the endeavor to establish the existence of a factual dispute, the opposing party

8    need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

9    claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

10   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

11   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

12   genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

13   committee's note on 1963 amendments).

14             In resolving the summary judgment motion, the court examines the pleadings,

15   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

17   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

18   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

19   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

20   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

21   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

22   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

23   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

24   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

25   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

26   /////

4

**OTHER APPLICABLE LEGAL STANDARDS**

I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

      The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

      Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II.  Eighth Amendment and Adequate Medical Care

      The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials

1  acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.

2  Seiter, 501 U.S. 294, 298-99 (1991).

3          Where a prisoner's Eighth Amendment claims arise in the context of medical

4  care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

5  deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth

6  Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need

7  and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050,

8  1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133

9  (9th Cir. 1997) (en banc).

10         A medical need is serious "if the failure to treat the prisoner's condition could

11  result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

12  McGuckin, 974 F.2d at 1059 (quoting Estelle v. Gamble, 429 U.S. at 104).  Indications of a

13  serious medical need include "the presence of a medical condition that significantly affects an

14  individual's daily activities."  Id. at 1059-60.  By establishing the existence of a serious medical

15  need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation.

16  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

17         If a prisoner establishes the existence of a serious medical need, he must then

18  show that prison officials responded to the serious medical need with deliberate indifference.

19  Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials

20  deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in

21  which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94

22  (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard

23  to medical care, however, "the indifference to his medical needs must be substantial.  Mere

24  'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

25  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

26  105-06).  See also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in

6

1   diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

2   Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of

3   mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for

4   the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

5          Delays in providing medical care may manifest deliberate indifference.  Estelle,

6   429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from a delay in

7   providing care, a plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d

8   1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332,

9   1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v.

10  Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a]

11  prisoner need not show his harm was substantial; however, such would provide additional

12  support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett

13  v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d at 1060.

14         Finally, mere differences of opinion between a prisoner and prison medical staff

15  as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim.

16  Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v.

17  Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.

18  1981).

19              **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

20  I.  Defendants' Statement of Undisputed Facts and Evidence

21         The defendants' statement of undisputed facts is supported by citations to a

22  declaration signed under penalty of perjury by defendant Traquina.  It is also supported by

23  citations to plaintiff's complaint and copies of his medical records.

24         The evidence submitted by the defendants establishes the following.  On August

25  25, 2005, plaintiff saw Dr. William Chen for evaluation of a lump in his left breast.  Dr. Chen

26  found a tender mass measuring 3.0 cm by 2.0 cm and requested a mammogram and a surgical

                                                7

1  consultation.  He also prescribed Motrin for plaintiff's discomfort.  On December 21, 2005,

2  defendant Noriega, the surgical consultant, diagnosed plaintiff with left breast gynecomastia.  He

3  also found multiple pigmented moles on plaintiff's chest and abdomen and recommended

4  excisional biopsy of two of the lesions to rule out melanoma in light of plaintiff's family history

5  of melanoma.  On December 28, 2005, defendant Noriega removed two of the pigmented moles

6  and prescribed Motrin for plaintiff's postoperative discomfort.  The results of the biopsies were

7  benign, thereby ruling out melanoma.  (Defs.' SUDF 4, Traquina Decl. ¶¶ 6-7 & Ex. A.)

8  On November 7, 2005, plaintiff underwent a mammogram, which suggested that

9  he had left breast gynecomastia.  On August 2, 2006, plaintiff saw Dr. Eisenberg, an

10  endocrinologist at Queen of the Valley Hospital.  Dr. Eisenberg ordered another mammogram,

11  which also indicated plaintiff had left breast gynecomastia.  On October 11, 2006, plaintiff saw

12  Dr. Eisenberg a second time.  Dr. Eisenberg found that the mass on plaintiff's left breast had

13  doubled in size and ordered additional tests and studies.  In an October 16, 2006 addendum, Dr.

14  Eisenberg noted that plaintiff's gynecomastia was idiopathic or of unknown cause based on the

15  negative results of plaintiff's work-up, which included clinical, hormonal, and imaging studies.

16  Dr. Eisenberg also noted that "we have ruled out other causes such as testicular tumor, deficiency

17  or excessive testosterone, chronic renal disease, chronic liver disease and drug therapy. . . ."

18  Finally, Dr. Eisenberg recommended surgical removal of the left breast mass by a plastic

19  surgeon.  (Defs.' SUDF 5, Traquina Decl. ¶¶ 8-9 & Ex. A.)

20  On January 30, 2007, the Medical Authorization Review ("MAR") Committee

21  denied plaintiff's request for surgery but referred him to Dr. Young, a plastic surgeon at UCSF

22  for further review.  Both defendants Noriega and Traquina were members of the MAR

23  Committee.  (Defs.' SUDF 7, Traquina Decl. ¶ 10 & Ex. A.)

24  On April 16, 2007, plaintiff saw Dr. Young.  Dr. Young diagnosed plaintiff with

25  idiopathic left-sided gynecomastia and recommended surgery for the condition.  On July 12,

26  2007, the MAR Committee denied plaintiff's request for surgery again because it considered the

procedure cosmetic.  The California Code of Regulations and California Department of

Corrections and Rehabilitation policy prohibit cosmetic surgery.  Based on plaintiff's diagnoses

and evaluations, the MAR Committee decided to continue with a conservative course of

treatment, including observation and symptomatic treatment with anti-inflammatory medication.

(Defs.' SUDF 5, 7, Traquina Decl. ¶¶ 10-11, 16 & Ex. A.)

On December 2, 2008, Dr. Nguyen, a contract physician, referred plaintiff to the

CSP-Solano Surgical Clinic for evaluation of moles and reevaluation of his left breast

gynecomastia.  On May 13, 2009, defendant Traquina examined plaintiff and reviewed his

medical record.  Plaintiff's left breast was slightly larger than the right breast and had multiple

small tender nodules measuring about 3.0 mm in diameter, consistent with small gynecomastia

with fibrocystic changes.  On October 11, 2006, Dr. Eisenberg measured plaintiff's left breast

gynecomastia at 8.0 cm to 9.0 cm in diameter.  Plaintiff's breast enlargement had decreased

significantly in size during the last three years.  According to defendant Traquina, it was half of

the size as described in 2006.  (Defs.' SUDF 8, Traquina Decl. ¶¶ 12-13 & Ex. A.)

In general, gynecomastia is a benign condition that does not cause pain.  On

occasion, it may cause discomfort, which Motrin can control.  Gynecomastia is a fibrocystic

condition, which causes the development of abnormally large mammary glands.  Although it is

not physically harmful, in some cases, it can be an indicator of other more serious underlying

conditions, such as a testicular tumor, high or low testosterone levels, renal disease, and liver

disease.  If those conditions are present, treating the underlying condition may lead to

improvement of the condition.  Medication may also cause gynecomastia.  In such cases an

alternative medication may be available to avoid the gynecomastia side-effects while still treating

the primary condition for which the original medication was prescribed.  Although surgery may

be an option, American insurance companies generally deny coverage for surgery on the grounds

that it is a cosmetic procedure.  (Traquina Decl. ¶ 14.)

/////

Test results revealed no underlying cause of plaintiff's gynecomastia. Medication was also ruled out as a possible cause. In addition, according to defendant Traquina, plaintiff's gynecomastia had reduced in size without surgery. In defendant Traquina's board certified surgical opinion, surgery was not and is not now advisable in plaintiff's case. Defendant Traquina believes that Motrin can relieve any discomfort and that plaintiff should be treated with annual examinations and mammograms as indicated. (Traquina Decl. ¶ 15 & Ex. A.)

Plaintiff has been prescribed Motrin on the following dates: August 25, 2005 (800 mg) for sixty days; October 13, 2005 (800 mg) for ninety days; December 5, 2005 (400 mg) twenty tablets; December 28, 2005 (400 mg) for three days; February 26, 2007 (800 mg) for three days; October 15, 2007 (800 mg) for six months. In addition, defendant Traquina has provided plaintiff with detailed instruction on self breast examination. (Traquina Decl. ¶ 15 & Ex. A.)

In defendant Traquina's opinion, plaintiff has received all reasonable and necessary care consistent with community standards and consistent with the degree of knowledge and skill ordinarily possessed and exercised by members of his profession under similar circumstances. According to defendant Traquina, plaintiff has a benign condition and possible serious causes for his condition have been ruled out. In defendant Traquina's opinion, monitoring plaintiff's condition and treating it with anti-inflammatories such as Motrin as needed is medically acceptable and preferable to surgical treatment. Defendant Traquina states that at all times he tried to treat plaintiff with dignity and respect, and at no time did he refuse to provide him with necessary care or treatment. (Defs.' SUDF 9-12, Traquina Decl. ¶¶ 5, 17-18.)

II. Defendants' Arguments

Defense counsel argues that under the undisputed facts of this case neither defendant Traquina nor defendant Noriega was deliberately indifferent to plaintiff's medical needs. Specifically, counsel argues that plaintiff has a benign condition that is most appropriately treated conservatively. In defendant Traquina's professional opinion, a conservative approach is preferable in light of the inherent risks of surgery, such as bleeding,

1    infection, and scarring.  Additionally, surgery for gynecomastia is generally regarded as cosmetic

2    by American insurance companies.  Here, the MAR Committee denied plaintiff's request for

3    surgery because it too determined that it was cosmetic and not medically necessary.  (Defs.' Mot.

4    for Summ. J. at 7-8.)

5            Defense counsel also argues that in cases involving complex medical issues,

6    expert medical testimony is necessary to establish deliberate indifference as well as to show that

7    the alleged failure to provide plaintiff care or treatment caused him actual harm.  In this case,

8    counsel argues that the defendants provided plaintiff with an appropriate course of treatment for

9    his condition.  According to defense counsel, although plaintiff seems to believe that he needs

10    surgery and two outside physicians recommended it, those are mere differences of opinion and do

11    not support plaintiff's Eighth Amendment claim.  (Defs.' Mot. for Summ. J. at 10.)

12            Finally, defense counsel argues that plaintiff cannot establish that the defendants

13    had actual knowledge of a "substantial risk of serious harm."  The MAR Committee, including

14    defendants Traquina and Noriega, determined that the requested surgery was not medically

15    necessary and was cosmetic.  The California Code of Regulations excludes cosmetic procedures

16    for inmates.  Moreover, plaintiff's laboratory tests produced normal results, which ruled out other

17    causes of the growth, including testicular tumor, deficiency or excessive testosterone, chronic

18    renal disease, chronic liver disease, and drug therapy.  Defense counsel concludes, based upon

19    these alleged facts, that plaintiff received all reasonable and necessary care and is receiving

20    treatment which is less risky and preferable to the surgery he requests.  (Defs.' Mot. for Summ. J.

21    at 10-11.)

22    III.  Plaintiff's Opposition

23            In opposition to defendants' motion for summary judgment, plaintiff's counsel

24    argues that the record shows that defendants Traquina and Noriega were deliberately indifferent

25    to plaintiff's serious medical needs.  According to plaintiff's counsel, since 2005 plaintiff has

26    complained about chronic and excruciating pain as a result of the growth in his left chest.

1   Plaintiff has also repeatedly sought medical care from medical personnel at CSP-Solano as well

2   as from outside specialists.  Moreover, contrary to defendants' claim, plaintiff's growth remains

3   as large as it was when Dr. Eisenberg measured it in 2006.  In this regard, plaintiff's counsel

4   contends that there is a legitimate factual dispute as to whether plaintiff has been suffering from a

5   serious medical condition.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 10-12 & Pl.'s Decl. ¶ 24.)

6            Counsel for plaintiff also argues that the record shows that Dr. Eisenberg and Dr.

7   Young recommended surgery for plaintiff because the growth in his chest caused him pain.

8   Defendants Traquina and Noriega, on the other hand, failed to consider plaintiff's pain when they

9   denied his requests for surgery.  In fact, the only reason the defendants denied plaintiff's requests

10  for surgery was because they considered the recommended procedure cosmetic.  Counsel

11  contends that, unlike Drs. Eisenberg and Young, the defendants based their decision on legal

12  considerations (i.e., whether the California Code of Regulations permitted the procedure) and not

13  on plaintiff's well-documented medical condition and symptoms.  In this regard, plaintiff's

14  counsel contends that this case does not revolve around a mere difference of medical opinion but

15  rather involves a legitimate factual question as to whether the defendants Traquina and Noriega

16  acted with deliberate indifference to plaintiff's serious medical needs.  (Pl.'s Opp'n to Defs.'

17  Mot. for Summ. J. at 11-15.)

18           Finally, plaintiff's counsel argues that he is not required to provide expert

19  testimony to demonstrate the defendants' deliberate indifference.  Defendants have not

20  established that this case involves a complex medical issue.  On the contrary, according to

21  plaintiff's counsel, it involves a simple claim that the defendants refused to provide plaintiff with

22  adequate medical care.  In addition, defendant Traquina's declaration cannot be offered as expert

23  testimony because the defendants never identified him as an expert witness.  Moreover, even

24  assuming the court considers defendant Traquina an expert, plaintiff has submitted reports from

25  two medical specialists who examined plaintiff and opined that he needed surgery.  Finally,

26  plaintiff's counsel argues that plaintiff does not need expert testimony to establish actual harm

1    caused by the defendants deliberate indifference because he may establish the infliction of pain

2    by producing evidence of an existing medical condition which is reasonably likely to be the cause

3    of his alleged pain.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 15-17.)

4    IV.  Defendants' Reply

5            In reply, defense counsel argues that defendant Traquina's understanding is that

6    gynecomastia is not a condition that causes pain and that Traquina's examination of plaintiff

7    indicated that he had tenderness, not pain, as would be expected with gynecomastia.  In addition,

8    defense counsel contends, plaintiff's gynecomastia shrunk on its own without surgery.  To the

9    extent that plaintiff claims to suffer pain or discomfort, defense counsel argues that there is no

10   evidence of any instance in which plaintiff requested but was refused pain medication.  Defense

11   counsel asserts that the evidence indicates plaintiff  was prescribed Motrin on numerous

12   occasions.  Although plaintiff states in his declaration that he began experiencing pain in March

13   2006, defense counsel argues that Dr. Eisenberg's August 2006 report indicates that plaintiff told

14   him that "there has never been any pain."  (Defs.' Reply at 1-2.)

15           Defense counsel also argues that defendant Traquina believes that subjecting

16   plaintiff to surgery is not in plaintiff's best interests.  Defense counsel contends that although

17   plaintiff attempts to support his argument that surgery is medically necessary based on Dr.

18   Eisenberg and Dr. Young's recommendations, these doctors' unsworn statements make clear that

19   they only recommended surgery, not that surgery was medically necessary or that defendant

20   Traquina's contrary opinion fell below the standard of care or amounted to deliberate

21   indifference.  Counsel argues that defendant Traquina's recommendation is consistent with what

22   would be authorized by a private health insurance company.  In this regard, defense counsel

23   contends that this case involves a mere difference of medical opinion, which cannot support a §

24   1983 claim.  (Defs.' Reply at 2-3.)

25           Finally, defense counsel argues that the defendants provided plaintiff with an

26   acceptable level of medical care.  They gave him a thorough work-up, including several

1    examinations at the prison, a referral to two outside specialists, two mammograms, and clinical,

2    hormonal, and imaging studies, which confirmed the diagnosis of benign idiopathic

3    gynecomastia and they ruled out other serious underlying conditions or causes.  Defense counsel

4    contends that plaintiff has failed to rebut defendant Traquina's expert opinion and the

5    conservative course of treatment the defendants chose to administer.  Accordingly, defense

6    counsel concludes that the defendants are entitled to summary judgment in their favor.  (Defs.'

7    Reply at 2-3.)

8                                    **ANALYSIS**

9    I.  Plaintiff's Serious Medical Needs

10                  Based on the evidence presented by the parties in connection with the pending

11   motion, the undersigned finds that a reasonable juror could conclude that plaintiff's left breast

12   gynecomastia and related pain constituted an objective, serious need for medical treatment.  See

13   McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient

14   would find important and worthy of comment or treatment; the presence of a medical condition

15   that significantly affects an individual's daily activities; or the existence of chronic and

16   substantial pain are examples of indications that a prisoner has a 'serious' need for medical

17   treatment."); see also Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the Eighth

18   Amendment duty to provide medical care applies "to medical conditions that may result in pain

19   and suffering which serve no legitimate penological purpose.").  Specifically, the record in this

20   case demonstrates that plaintiff repeatedly sought and received medical care for his condition

21   from medical personnel at CSP-Solano, including both of the defendants, and from two outside

22   specialists.  In light of plaintiff's medical history as well as the observations and treatment

23   recommendations by several doctors, a reasonable juror could conclude that failure to treat

24   plaintiff's gynecomastia and related pain could result in "further significant injury" and the

25   "unnecessary and wanton infliction of pain."  See, e.g., McGuckin, 974 F.2d at 1059.

26   Accordingly, defendants' motion for summary judgment hinges on whether, based upon the

                                            14

1  evidence before the court, a rationale jury could conclude that the defendants responded to

2  plaintiff's serious medical needs with deliberate indifference.  <u>Farmer</u>, 511 U.S. at 834; <u>Estelle</u>,

3  429 U.S. at 106.   Based on the evidence presented by the parties in connection with the pending

4  motion, the undersigned finds that a reasonable juror could conclude that defendants Traquina

5  and Noriega responded to plaintiff's serious medical needs with deliberate indifference.  <u>See</u>

6  <u>Farmer</u>, 511 U.S. at 834; <u>Estelle</u>, 429 U.S. at 106.

7  II.  <u>Defendants' Response to Plaintiff's Serious Medical Needs</u>

8         As a preliminary matter, the court finds that the defendants have borne their initial

9  responsibility of demonstrating that there is no genuine issue of material fact with respect to the

10  adequacy of the medical care provided to plaintiff.  For example, defendants evidence

11  demonstrates that gynecomastia is a fibrocystic condition, which causes the development of

12  abnormally large mammary glands.  In general, it is a benign condition that does not cause pain

13  but may cause discomfort, which can be controlled by Motrin.  In some cases, gynecomastia is

14  caused by an underlying medical condition or medication.  However, here, plaintiff's negative

15  test results based on clinical, hormonal, and imaging studies indicate that his gynecomastia is

16  idiopathic.  (Traquina Decl. ¶¶ 8, 14-15 & Ex. A.)

17         Both defendants Noriega and Traquina have treated plaintiff for his gynecomastia.

18  On December 21, 2005, defendant Noriega diagnosed plaintiff with left breast gynecomastia.  He

19  also subsequently removed two of plaintiff's pigmented moles to rule out melanoma as a cause

20  and prescribed him Motrin for any postoperative discomfort for three days.  Plaintiff then saw

21  Dr. Eisenberg and Dr. Young in connection with his gynecomastia.  Both of them recommended

22  surgery.  The MAR Committee, which both defendants Noriega and Traquina were members of,

23  denied plaintiff's requests for surgery on two separate occasions because it too determined that

24  surgery would be cosmetic only and was not medically necessary.  According to defendant

25  Traquina, a board certified general surgeon, plaintiff has received all reasonable and necessary

26  care for his condition and surgery was not and is not now advisable in plaintiff's case.  Instead,

15

1   according to defendant Traquina, plaintiff should be treated with annual examinations,

2   mammograms as indicated, and Motrin for any discomfort.  In fact, during defendant Traquina's

3   recent examination of plaintiff on May 13, 2009, he observed that plaintiff's gynecomastia had

4   reduced in size without surgery.  (Traquina Decl. ¶¶ 7, 10-11, 13, 17 & Ex. A.)  Given this

5   evidence, the burden shifts to plaintiff to establish the existence of a genuine issue of material

6   fact with respect to his deliberate indifference claims.

7          As indicated above, the court finds that plaintiff has submitted sufficient evidence

8   to create a genuine issue of material fact precluding summary judgment in defendants' favor.

9   Defense counsel is obviously correct in stating that a mere difference of opinion between a

10  prisoner and prison medical staff does not give rise to a cognizable § 1983 claim.  See Toguchi,

11  391 F.3d at 1058; Jackson, 90 F.3d at 332; see also Fleming v. Lefevere, 423 F. Supp. 2d 1064,

12  1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not

13  create a triable issue of fact because he has not shown that he has any medical training or

14  expertise upon which to base such an opinion.").  Likewise, a difference of medical opinion

15  between doctors does not give rise to a constitutional violation.  See Toguchi, 391 F.3d at 1059-

16  60 ("Dr. Tackett's contrary view was a difference of medical opinion, which cannot support a

17  claim of deliberate indifference."); Sanchez, 891 F.2d at 242 (difference of opinion between

18  medical personnel regarding the need for surgery does not amount to deliberate indifference to a

19  prisoner's serious medical needs).

20         However, in the undersigned's view, the evidence in the instant case is akin to

21  those cases where prison officials and doctors deliberately ignore the express orders of a

22  prisoner's treating physician.  See Jett, 439 F.3d at 1097-98 (finding a triable issue of fact as to

23  whether a prison doctor was deliberately indifferent to a prisoner's medical needs when he

24  decided not to request an orthopedic consultation as the prisoner's emergency room doctor had

25  previously ordered); Hamilton v. Endell, 981 F.2d 1062, 1067 (9th Cir. 1992) (finding a triable

26  issue of fact as to whether prison officials were deliberately indifferent to prisoner's serious

1  medical needs when they relied on the opinion of a prison doctor instead of the opinion of the

2  prisoner's treating physician and surgeon), abrogated in part on other grounds by Estate of Ford

3  v. Ramirez-Palmer, 301 F.3d 1043, 1045 (9th Cir. 2002).

4           According to the evidence submitted by plaintiff, on August 25, 2005, he saw Dr.

5  Chen who observed that plaintiff was suffering from a tender mass measuring 3.0 cm by 2.0 cm

6  in his left chest.  Dr. Chen requested a mammogram of the lump in plaintiff's left breast and

7  prescribed Motrin for plaintiff's discomfort.  However, no action was taken after nearly two

8  months, so plaintiff submitted a health care services request form to prison officials.  Only then

9  did plaintiff receive an order for a mammogram.  On November 7, 2005, plaintiff underwent the

10 mammogram, which suggested that he had left breast gynecomastia.  Plaintiff, unaware of the

11 mammogram results, submitted two additional health care services request forms to prison

12 officials on December 16, 2005, and March 6, 2006, inquiring about the test and expressing

13 concerns about his growth.  Over the next several months, plaintiff submitted two more health

14 care services request forms on May 2, 2006, and July 29, 2006, reiterating his concern about the

15 growth and noting that it was growing in size and causing him increasing pain.  (Pl.'s Decl. ¶¶ 4-

16 5, 7-8 & Exs. B-F.)

17          On August 2, 2006, plaintiff finally was allowed to see Dr. Eisenberg of Queen of

18 the Valley Hospital.  Plaintiff also underwent a second mammogram at that time which indicated

19 that his left breast gynecomastia was "more prominent" than on his previous mammogram.  Dr.

20 Eisenberg's impression was that plaintiff had "[l]eft-sided gynecomastia with some

21 lymphadenopathy."  In the following two months, the lump in plaintiff's chest continued to grow

22 in size and his pain increased in intensity, so plaintiff submitted another health care services

23 request form to prison officials on October 5, 2006, explaining that he had been scheduled to see

24 a specialist but had not seen one yet.  (Pl.'s Decl. ¶¶ 9-10 & Exs. G-H.)

25          On October 11, 2006, plaintiff saw Dr. Eisenberg a second time.  Dr. Eisenberg

26 noted that plaintiff's gynecomastia was "considerable in degree and quite tender" and had

increased to 8.0 cm to 9.0 cm in diameter, whereas before it was 4.0 cm to 5.0 cm diameter.  Dr.
Eisenberg recommended surgery to treat plaintiff's condition because he believed it was "likely
to be progressive and [the] cause of considerable distress."  In an addendum to his report dated
October 16, 2006, Dr. Eisenberg recommended that a plastic surgeon perform the procedure
because general surgeons tend to produce considerable deformity in performing the necessary
procedure.  (Pl.'s Decl. ¶¶ 11-13 & Exs. I-J.)

On November 21, 2006, and again on January 12, 2007, plaintiff submitted
additional health care services request forms to prison officials, inquiring when his surgery would
take place because the growth in his chest was causing him constant pain.  Having not received a
response from prison officials, plaintiff filed an administrative appeal on November 26, 2006.
Therein, he wrote that the growth on his chest was growing larger and more painful.  On
February 9, 2007, defendant Traquina, on behalf of defendant Noriega, responded to plaintiff's
grievance at the first formal level of review and explained that the MAR Committee denied
plaintiff's request for surgery because the procedure was considered cosmetic under the
California Code of Regulations, Title 15, Section 3350.  At the time, defendants Traquina and
Noriega were members of the MAR Committee.  The MAR Committee's denial fails to indicate
whether the committee took the pain being suffered by plaintiff into consideration before
rendering its decision.  (Pl.'s Decl. ¶¶ 14-17 & Exs. K-P.)

On April 16, 2007, plaintiff saw Dr. Young at UCSF Medical Center, Division of
Plastic and Reconstructive Surgery in connection with his left breast gynecomastia.  Plaintiff
informed Dr. Young that he had developed swelling on the left side of his chest over the previous
two years.  He also complained to Dr. Young that he was suffering pain and tenderness and that
his chest hurt whenever he attempted to move his arms.  Dr. Young's impression was that
plaintiff had idiopathic left-sided gynecomastia with significant deformity.  Similar to Dr.
Eisenberg, Dr. Young recommended that plaintiff "undergo excision of the excess breast tissue."
He also recommended that a plastic surgeon perform the procedure to prevent deformity of the

1   chest.   (Pl.'s Decl. ¶¶ 18-19 & Ex. Q.)

2          Notwithstanding Dr. Young's recommendation for surgery as well as Dr.

3   Eisenberg's previous recommendation for surgery, on April 16, 2007, defendant Traquina

4   responded to plaintiff's administrative appeal at the second formal level of review and explained

5   that the MAR Committee denied his request for surgery again, noting that "there is no medical

6   need to excise the excessive breast tissue, hence, such procedure is considered cosmetic in

7   nature."  At the time, defendants Traquina and Noriega were members of the MAR Committee.

8   Once again, the MAR Committee's denial fails to indicate whether the committee took plaintiff's

9   pain into consideration before rendering its decision.  (Pl.'s Decl. ¶¶ 20-21 & Ex. R.)

10         In considering defendants' motion for summary judgment, the court is required to

11  believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in

12  plaintiff's favor.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587.  Drawing all

13  reasonable inferences from the evidence in plaintiff's favor, the court finds that the evidence

14  before it on summary judgment indicates that this case involves more than a mere difference of

15  opinion over the appropriate course of treatment.  See, e.g., Estelle, 429 U.S. at 104-05 (holding

16  that deliberate indifference may manifest "by prison doctors in their response to the prisoner's

17  needs or by prison guards in intentionally denying or delaying access to medical care or

18  intentionally interfering with the treatment once prescribed"); Lopez v. Smith, 203 F.3d 1122,

19  1132 (9th Cir. 2000) (holding that a prisoner may establish deliberate indifference by showing

20  that a prison official intentionally interfered with his medical treatment); Wakefield v.

21  Thompson, 177 F.3d 1160, 1165 & n.6 (9th Cir. 1999) (holding that "a prison official acts with

22  deliberate indifference when he ignores the instructions of the prisoner's treating physician or

23  surgeon.").

24         Specifically, plaintiff's case came before defendants Noriega and Traquina on at

25  least two occasions.  They were aware that plaintiff had left breast gynecomastia and that it was

26  growing in size and causing him increased pain.  They were also aware that two outside

                                    19

1   specialists that prison officials referred plaintiff to had recommended surgery as the course of

2   treatment.  It is undisputed that the defendants had the authority to authorize surgery for plaintiff,

3   but they denied the procedure as "cosmetic" even though it appeared to be medically necessary

4   under at least one view of the evidence.  Under these circumstances, a reasonable juror could find

5   that, based on the evidence before the court, the defendants ignored plaintiff's serious medical

6   needs as well as the recommendations of two medical specialists thereby violating plaintiff's

7   right to adequate medical care under the Eighth Amendment.  Cf. Hamilton, 981 F.2d at 1067

8   ("By choosing to rely upon a medical opinion which a reasonable person would likely determine

9   to be inferior, the prison officials took actions which may have amounted to the denial of medical

10  treatment, and the 'unnecessary and wanton infliction of pain.'").

11          Finally, insofar as defense counsel argues that plaintiff cannot establish that the

12  defendants had actual knowledge of a "substantial risk of serious harm," the court finds the

13  argument unpersuasive.  It is well established that this court cannot grant defendants' motion for

14  summary judgment simply based on their assertion as to their own state of mind.  As the Ninth

15  Circuit recently has explained:

16          Proof of "subjective awareness" is not limited to the purported
            recollections of the individuals involved.  "Whether an official had
17          the requisite knowledge of a substantial risk is a question of fact
            subject to demonstration in the usual ways, including inference
18          from circumstantial evidence."  Indeed, in certain circumstances,
            "a factfinder may conclude that [an] official knew of a substantial
19          risk from the very fact that the risk was obvious. . . ."

20                                          * * *

21          "[Q]uestions involving a person's state of mind are generally
            factual issues inappropriate for resolution by summary judgment."
22          We, of course, "may not make credibility determinations or weigh
            conflicting evidence."  (internal citations omitted)

23

24  Conn v. City of Reno, 572 F.3d 1047, 1057-58 (9th Cir. 2009).

25          As noted above, the evidence before the court establishes that plaintiff has a long

26  medical history of suffering from gynecomastia.  As early as August 2005, he began submitting

health care services request forms at CSP-Solano for medical care related to the gynecomastia.

In the ensuing years, plaintiff sought and ultimately received medical attention for his condition

from CSP-Solano doctors, including Dr. Chen, Dr. Noriega, and Dr. Nguyen.  Both Dr. Chen and

Dr. Nguyen requested surgical consultations for plaintiff.  Plaintiff also sought and ultimately

received medical attention from two outside specialists, Dr. Eisenberg and Dr. Young.  Both Dr.

Eisenberg and Dr. Young recommended surgery for plaintiff's condition.  During his visits with

these various doctors and in multiple health care services request forms and administrative

grievances to prison officials, plaintiff complained about the worsening of his condition and the

pain he suffers as a result thereof.  As of August 27, 2009, plaintiff still suffers from left breast

gynecomastia, which measures around 9.0 cm, is tender, painful, and affects his daily activities.

Although plaintiff has received Motrin for pain on occasion, it does not alleviate the physical

suffering he experiences every day as a result of the gynecomastia.  (Pl.'s Decl. & Exs.)

Defendants Traquina and Noriega acknowledge that they were members of the

MAR Committee when the committee reviewed plaintiff's case on two separate occasions.  They

also acknowledge that they have previously treated him for his ongoing medical condition and/or

reviewed his administrative grievances regarding his medical care.  Finally, defendants Traquina

and Noriega acknowledge that, notwithstanding plaintiff's long medical history with

gynecomastia and Dr. Eisenberg and Dr. Young's recommendations for surgery, they denied his

requests as "cosmetic" even though, as noted above, surgery appears to be medically necessary

under at least one view of the evidence.  Under these circumstances, a reasonable juror could find

that, based on the evidence before the court, plaintiff's medical needs were so obvious that

defendants Noriega and Traquina should have been aware of any substantial risk of injury or

harm to plaintiff.

Accordingly, for all of the foregoing reasons, the court concludes that defendants

Noriega and Traquina are not entitled to summary judgment on plaintiff's Eighth Amendment

inadequate medical care claims.

**OTHER MATTERS**

Counsel for plaintiff has filed a request for judicial notice of this court's October 24, 2008 findings and recommendations, recommending that the parties' cross-motions for summary judgment be denied.  Judicial notice of adjudicative facts is appropriate with respect to matters that are beyond reasonable dispute in that they are either generally known or capable of accurate and ready determination by resort to a source whose accuracy cannot reasonably be questioned.  <u>See</u> Fed. R. Evid. 201 and advisory committee notes.  Here, the court's previous findings and recommendations are part of the record in this case.  Accordingly, the court will deny plaintiff's request for judicial notice as unnecessary.

**CONCLUSION**

IT IS HEREBY ORDERED that plaintiff's August 27, 2009 request for judicial notice (Doc. No. 41) is denied as unnecessary.

IT IS HEREBY RECOMMENDED that defendants' June 10, 2009 amended motion for summary judgment (Doc. No. 35) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 23, 2009.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
frym2636.57(2)